UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ABIGAIL ORENSKY,  )<br>    PLAINTIFF  )<br>v  )<br>  )<br>REVISION LLC, and  )<br>RVGD TOPCO LP,  )<br>    DEFENDANTS.  )<br>  )  | Case No. 2:25-cv-3056-DCN-MGB<br>Jury Trial Demanded |

## COMPLAINT

Comes now Plaintiff ABIGAIL ORENSKY, complaining of Defendants above named, and shows unto the Court as follows:

**PARTIES**

1. Plaintiff ABIGAIL ORENSKY ("Plaintiff" or "Ms. Orensky") is a citizen and resident of South Carolina, formerly employed by Defendant REVISION LLC.

2. Defendant REVISION LLC (hereafter "Defendant" or "Revision" or "Revision Skincare") is a Delaware LLC with its headquarters and principal office located at 1999 Bryan St, Suite 900, Dallas TX 75201-3136.

3. Defendant RGVD TOPCO LP (hereafter "Defendant" or "Topco") is a Delaware business entity, file no 6322687, described by Defendants as "a related entity" to Revision.

**JURISDICTION**

4. Plaintiff Abigail Orensky brings this action to vindicate her rights not to be discriminated against in her employment and not to be terminated because of her pregnancy.

5. Jurisdiction over Defendants is proper insofar as the actions complained of occurred, in whole or in part, in South Carolina, because Defendant Revision Skincare employed Plaintiff out of her home in Charleston, South Carolina, to make sales and assist customers located in parts of

1

South Carolina and North Carolina to whom she sold and delivered or had delivered product of Revision Skincare, and because the federal statute sued upon (Title VII) provides federal question jurisdiction pursuant to 28 U.S.C. 1331.

## FACTS

6. Ms. Orensky informed Revision SKINCARE's Human Resources ("HR") of her pregnancy in September, 2024.

7. Then barely 3 months later Ms. Orensky was informed by surprise in early January, 2025, that the "company had determined her territory was no longer viable, would be dissolved, and her position eliminated."

8. No warning of any possible termination had been provided by Revision Skincare to Ms. Orensky.

9. No prior discipline had been taken by Revision Skincare against Ms. Orensky

10. No discussion of any corrective revisions to her territory nor any reasons as to why it was suddenly "no longer viable" had been discussed by Revision SKINCARE with Ms. Orensky.

11. Upon contacting the company, Ms. Orensky was informed by HR that her termination "had nothing to do with performance."

12. Revision Skincare was aware, however, of Ms. Oresky's maternity leave upcoming in April of this year (2025).

13. As to any suggestion that her territory was "not viable," the explanation provided to Ms. Orensky, to her knowledge, was false - based on the facts that both her carstock allowance and her expense budget had recently been raised by Revision Skincare every quarter.

14. Yet, instead of explaining this discrepancy, Ms. Orensky was told that HR wasn't "getting into the nitty gritty details" with her about why she was terminated.

15. Defendants' statement to Ms. Orensky that they weren't "getting into the nitty gritty details" with her about why she was terminated was made because Defendants knew their explanation about her territory supposedly being "not viable" was false.

16. Defendant Revision Skincare lacked any legal legitimate and non-discriminatory reason for Ms. Orensky's termination.

17. Defendant Revision Skincare discriminated against and terminated Plaintiff Abyy Orensky's employment because of her pregnancy.

18. Ms. Orensky received a "Confidential Separation Agreement and Release" from Defendants Revision LLC and RVGD TOPCO LP bearing a "Separation Date" of January 10, 2025. (Ex A hereto).

19. The "Confidential Separation Agreement and Release" referred to Defendants Revision LLC and RVGD TOPCO LP "collectively [as] the 'Released Parties.'"

20. Under the heading "Release of Claims" the "Confidential Separation Agreement and Release" (to which Ms. Orensky had never agreed, and of which she had never been previously informed) stated that:

> **Employee hereby irrevocably and unconditionally releases, acquits, and forever discharges the Released Parties from any and all claims,** liabilities, obligations, promises, agreements, and losses of any nature whatsoever, known or unknown, suspected or unsuspected, arising out of or relating in any way to any fact that existed or any event, conduct, or omission that occurred at any time prior to Employee's execution of this Agreement. **This general release shall be enforced to the maximum extent permitted by law** and **includes** (without limitation) the following: (a) **all claims arising out of or in any way related to Employee's employment with the Company or the termination of that employment;** (b) all claims related to Employee's compensation or benefits from the Company, including wages, salary, variable compensation, incentive payments, bonuses, commissions, vacation pay, expense reimbursements, fringe benefits, or **failure to timely pay wages or commissions upon termination**; (c) all claims-for breach of contract, **wrongful termination**, and breach of any express or implied covenant of good faith and fair dealing; (d) all tort claims, including (without limitation) claims for fraud, defamation, **emotional distress**, privacy violations,

unfair business practice, and discharge in violation of public policy; and (e) **all federal**, state, and local **statutory claims**, including (without limitation) **claims for discrimination**, harassment, retaliation, attorneys' fees, statutory or civil penalties, or other claims arising under any statute, regulation, or ordinance, **including**, but without limiting the generality of the foregoing, **under Title VII of the Civil Rights Act of 1964**; Sections 1981 through 1988 of Title 42 of the United States Code; the Family and Medical Leave Act; the Employee Retirement Income Security Act of 1974 (except for any vested benefits under any tax-qualified benefit plan); the Americans with Disabilities Act of 1990; the Age Discrimination in Employment Act of 1967; the Occupational Safety and Health Act; the Equal Pay Act; the Worker Adjustment and Retraining Notification Act; the Fair Credit Reporting Act; the Fair Labor Standards Act and the Texas Labor Code. Notwithstanding the foregoing, this release does not extend to any claims that may not be released as a matter of law including claims for workers' compensation and unemployment insurance benefits.

(Emphasis supplied).

21. When Defendants sent their "Confidential Separation Agreement and Release" to Ms. Orensky, and spoke with her by telephone when she inquired about why she was being terminated, Defendants were aware:

    (i)     that Ms. Orensky had informed Revision LLC's Human Resources ("HR") of her pregnancy in September, 2024; (ii) that less than 3 months later Ms. Orensky was being informed by surprise in early January, 2025, that the "company had determined her territory was no longer viable, would be dissolved, and her position eliminated;" (iii) that no warning of any possible termination had been provided by Revision LLC to Ms. Orensky.; (iv) that no prior discipline had been taken by Revision LLC against Ms. Orensky; (v) that no discussion of any corrective revisions to her territory nor any reasons as to why it was suddenly "no longer viable" had been discussed by Revision LLC with Ms. Orensky; (vi) that Ms. Orensky was being informed by HR that her termination "had nothing to do with performance." (vii) that Revision LLC was aware, however, of Ms. Oresky's maternity leave upcoming in April of this year (2025); (viii) and that as to any suggestion that her territory was "not viable," the explanation provided to Ms. Orensky, to her knowledge, was false - based on the facts that both her carstock allowance and her expense budget had recently been raised by Revision LLC every quarter.

22. When Defendants sent their "Confidential Separation Agreement and Release" to Ms. Orensky, they were concerned that (for obvious reasons) they needed to attempt to protect

themselves from Ms. Oresnsky making claims of pregnancy discrimination in her termination when they knew that her termination "had nothing to do with her performance," that it was sprung upon her by surprise, and that any excuse that her territory was "not viable" was a false and "made-up" excuse, because they knew that both her carstock allowance and her expense budget had been raised by Revision Skincare every quarter she had been employed.

23. When Defendants sent their "Confidential Separation Agreement and Release" to Ms. Orensky, they were concerned that they needed to protect not only Revision Skincare but also to protect its "related entity" RVGD TOPCO LP, and that is why they included Topco as one of the "Released Parties" in the "Confidential Separation Agreement and Release" which they provided to Ms. Orensky by surprise and without warning.

24. Upon information and belief, Revision Skincare's Vice President of HR Francine Bean was an individual involved as a decision maker in the decision to terminated Ms. Orensky's employment.

25. Al all times relevant hereto Ms. Bean was acting within her authority and in her capacity as an agent of Revision Skincare.

26. Ms. Bean was supposed to sign the "Confidential Separation Agreement and Release" which they provided to Ms. Orensky at the signature line included on the "Confidential Separation Agreement and Release" as "Revision LLC By Francine Bean, VP HR."

27. Upon information and belief, Defendants decided to include Topco as a "released party," Defendants were aware that Topco acting through its agents and/or employees were involved in and approved the decision to terminated Ms. Orensky's employment.

28. Upon information and belief, when Defendants decided to include Topco as a "released party," Defendants were concerned that Topco (in addition to Revision Skincare) might have risk of

5

liability to Ms. Orensky because of pregnancy discrimination in the decision to terminate Ms. Orensky's employment.

29. Ms. Orensky's termination without cause and because of pregnancy discrimination against her has caused her to suffer significant distress.

30. In addition to a discriminatory termination with no cause, Revision Skincare also breached its employment agreement with Ms. Orensky by failing to pay her the amounts due her under her commission plan for her Q4 commission.

31. Not only did Revision Skincare fail to pay Ms. Orensky's commissions but it offered her only 4 weeks severance pay if she would give up her rights in the "Confidential Separation Agreement and Release."

32. Further, although Revision Skincare was aware that Ms. Orensky's termination would likely cause loss of her health insurance together with resulting understandable emotional upset and distress, it offered her only four (4) weeks of partial payment of COBRA health insurance continuation.

33. Because of her distress at her mistreatment and the discrimination against her in her termination, Ms. Orensky had a letter setting forth the facts of that discrimination sent to Revision Skincare's HR Vice President. (Ex B hereto).

34. In that letter, Ms. Oresky requested that Revision Skincare provide to her from her personnel records:

> copies of (i) the signed 2024 Commission Plan for an over $500k territory, (ii) the applicable Q4 bonus terms and your calculation of her Q4 bonus, and (iii) her complete personnel and payroll documents, so that we provide same to the EEOC

35. Revision Skincare had its lawyers send a response letter in which Revision Skincare failed to deny any of the facts of mistreatment and discrimination set forth in Ms. Orensky's letter. (Ex C hereto)

36. Further, instead of providing Ms. Orensky requested personnel documents, Revision Skincare did not even acknowledge her request for financial information from her own file.

37. Defendants' actions were intentional and wilful.

38. Defendants' actions have caused Ms. Orensky pecuniary and financial harm and damage, personal and emotional harm and distress, and entitle her to compensatory and punitive damages from Defendants to redress that harm and damage.

## Count I – Pregnancy Discrimination

39. The allegations of Paragraphs 1, 6-29, 35, 37-38 above are re-alleged as if fully set forth in this Count I.

40. Plaintiffs have fulfilled the requirement of filing a charge of discrimination in the respects set forth above with the EEOC. (Ex D hereto).

41. The EEOC has issued a Notice of Right to Sue in this matter. (Ex E hereto).

42. The unlawful actions of Defendants set forth above constitute intentional pregnancy and sex discrimination against Plaintiff Abigail Orensky.

43. The unlawful actions of Defendants set forth above entitle Plaintiff Abigail Orensky to the relief requested hereinbelow under Title VII of the Civil Rights Act of 1964 42 USC 2000e *et seq*.

## Count II – Violations of South Carolina Payment of Wages Act
### (against Revision Skincare)

44. The allegations of Paragraphs 1, 18, 20, 30, 34, 36-38 above are re-alleged as if fully set forth in this Count II.

45. Defendant Revision LLC was Plaintiff's "Employer" under SC Code § 41-10-10(1).

46. Despite its obligations as Plaintiff's Employer, Defendant Revision LLC failed and refuse to pay Plaintiff the agreed compensation to which Plaintiff was entitled in compensation for her employment with Defendant as required by SC Code § 41-10-40.

47. Despite its obligations as Plaintiff's Employer, when Defendant fired Plaintiff, Defendant Revision LLC failed and refused to pay Plaintiff her unpaid compensation within 48 hours of the time of separation or the next regular payday which may not exceed 30 days as required by SC Code § 41-10-50.

48. Because of Defendant Revision LLC's failure to pay Plaintiff as required by §§41-10-40, and 41-10-50 of the SC Payment of Wages Act, either during Plaintiff's employment or within 30 days after Plaintiff's separation from employment with Defendant, Plaintiff is entitled to recover from Defendant Revision LLC treble damages in "an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney fees." SC Code § 41-10-80(C).

## Count III – Breach of Contract
### (against Revision Skincare)

49. The allegations of Paragraphs 1, 18, 20, 30, 38 above are re-alleged as if fully set forth in this Count III.

50. Revision Skincare promised to pay Plaintiff Orensky certain commissions in exchange for her employment, but failed to pay same according to the terms of her commission plan.

51. Revision Skincare's failure to pay the commissions as promised constitute breach of contract which caused pecuniary and financial harm and damage to Plaintiff Orensky for which she is entitled to an award of damages from Revision Skincare to redress those damages.

**WHEREFORE**, having pled her Complaint against Defendants, Plaintiff Abigail Orensky requests trial by jury and entry of judgment against Defendants including:

a) Backpay to Plaintiff from the date of termination / layoff through the date of verdict;

b) Front pay for the number of years which Plaintiff intended (prior to the unlawful discrimination) to continue in Defendants' employ;

c) Compensatory damages including future pecuniary and non-pecuniary losses, suffering, mental anguish, inconvenience, and loss of enjoyment of life;

d) Pre-judgment interest; at 8.75% per annum;

e) Post-judgment interest;

f) Punitive and exemplary damages against Defendants in the amounts as determined by the jury having been apprised of the facts of the case;

g) Attorney's fees and expenses of litigation;

h) Such other and further relief as the Court deems just and proper.

Respectfully submitted:

Attorneys for Plaintiff

/s/ O. Grady Query  
O. Grady Query, Esquire  
*gquery@qlawsc.com*  
Query Sautter & Urichio, LLC  
147 Wappoo Creek Drive, Suite 202  
Charleston, South Carolina 29412  
Telephone    843.795.9500  
Facsimile    843.762.1500  

/s/ Walter J. Kruger III  
Walter J. Kruger III  
SC Bar Fed 02399  
*kruger.3@gmail.com*  
LAW OFFICES of WALTER KRUGER  
616 Ridgecrest Rd NE  
Atlanta, Georgia 30307  
770-842-9053

## VERIFICATION

I, undersigned Abigail Orensky, hereby verify that the information set forth in the foregoing Complaint is true and correct to the best of my knowledge and information, under penalty of perjury as prescribed by the laws of the United States. 28 USC §1746.

April  9   , 2025

_____
Abigail Orensky